*Notice: This opinion is subject to correction before publication in the PACIFIC REPORTER. Readers are requested to bring errors to the attention of the Clerk of the Appellate Courts, 303 K Street, Anchorage, Alaska 99501, phone (907) 264-0608, fax (907) 264-0878, email corrections@appellate.courts.state.ak.us.*

THE SUPREME COURT OF THE STATE OF ALASKA

| | | |
|---|---|---|
| TODD CHRISTIANSON, individually and d/b/a GREAT ALASKA LAWN AND LANDSCAPING, INC., | ) ) ) ) ) | Supreme Court No. S-14305 |
| | | Superior Court No. 3AN-08-09565 CI |
| Appellant, | ) ) | O P I N I O N |
| v. | ) ) | No. 6868 – February 21, 2014 |
| CONRAD-HOUSTON INSURANCE, | ) ) | |
| Appellee. | ) ) ) | |

Appeal from the Superior Court of the State of Alaska, Third Judicial District, Anchorage, Frank A. Pfiffner, Judge.

Appearances: Kevin T. Fitzgerald, Ingaldson, Maassen & Fitzgerald, P.C., Anchorage, for Appellant. Thomas A. Matthews and Kenneth G. Schoolcraft, Jr., Matthews & Zahare, P.C., Anchorage, for Appellee.

Before: Fabe, Winfree, and Stowers, Justices, and Eastaugh, Senior Justice.* [Carpeneti, Chief Justice, not participating.]

EASTAUGH, Senior Justice.
FABE, Justice, dissenting.

---

\* Sitting by assignment made under article IV, section 11 of the Alaska Constitution and Alaska Administrative Rule 23(a).

## I.    INTRODUCTION

When Keith Jones sued Todd Christianson for severe personal injuries Jones suffered while working for Christianson's landscaping business, Christianson tendered his defense to his general liability insurer. It did not accept his tender. It instead sent him a letter that told him he should defend himself and that discussed an exclusion for claims of employees. Christianson then began to incur defense expenses. No insurer on the policies obtained by Christianson's insurance broker, Conrad-Houston Insurance (CHI), ever defended him in Jones's lawsuit. Nearly four years after receiving the insurer's letter, Christianson sued CHI for malpractice. After conducting an evidentiary hearing, the superior court applied the discovery rule and dismissed the malpractice lawsuit because it was filed after the applicable three-year statute of limitations had run. The superior court ruled that because the insurer's letter put Christianson on inquiry notice he might have a claim against CHI, the statute of limitations had begun to run more than three years before Christianson sued CHI. Because the superior court did not clearly err and committed no legal error, we affirm.

## II.   FACTS AND PROCEEDINGS

### A.    Facts

Todd Christianson owns and has owned a number of past and current Alaska businesses.[1] He incorporated Great Alaska Lawn and Landscaping (GALL) in

---

[1]    Because the superior court granted summary judgment after conducting an evidentiary hearing and entering findings of fact, we rely here on the parties' evidentiary submissions, including passages from the depositions of Christianson and CHI's broker, and the hearing testimony of Christianson and his lawyer in this case. Some facts set out in the record in this case differ immaterially from those described in *Jones v. Bowie Industries, Inc.*, 282 P.3d 316 (Alaska 2012) (reversing defendants' judgments in Jones's personal injury lawsuit and remanding).

1992, but it was involuntarily dissolved in 2002. He started Titan Topsoil, Inc. in 1995, and started Titan Enterprises LLC in 2002. Titan Enterprises performed many of the same services GALL had performed. At all times, Christianson was the sole owner of both Titan entities. We refer to the two Titan entities collectively as "Titan."

In 2003 Christianson approached Mike Dennis, an agent at CHI, and sought insurance. A different brokerage firm had obtained insurance for Christianson's businesses in 2002. Christianson later testified that when he talked to Dennis, he "was looking for complete insurance on all my commercial entities that needed insurance." He testified that he expected the broker to "get the information, find out about my business and make sure I'm covered." He asserts in his appellate reply brief that he expected CHI to obtain insurance covering "all liabilities and potential liabilities" for his landscaping business. It appears that CHI understood that it was primarily responsible for obtaining insurance covering Titan. Christianson admitted when his deposition was taken that he owned entities that he did not insure through CHI. But he also testified that he provided Dennis with information about GALL, titles and registration on his vehicles, and "all [his] past [commercial insurance] policies," including GALL's. CHI's Titan file included a list of vehicle registrations; the file listed at least two vehicles registered to GALL, including the truck pertinent here. CHI knew when the insurance was placed that Christianson's business used a piece of equipment known as a hydroseeder or hydromulcher. We refer to it here as a "hydroseeder" for consistency with the superior court decision we are reviewing.

CHI obtained three policies insuring Titan: a workers' compensation policy from AIG, a general liability policy from Great Divide Insurance Company, and an auto policy from Cascade National Insurance Company. The three policies took effect in April and May of 2003. Christianson was an insured under the two liability policies.

Keith Jones was an employee of Titan. In June 2003 Jones was severely injured in a work-related accident with the hydroseeder being used by Titan. The hydroseeder was owned by GALL, but was "on loan" to Titan. It was mounted on a truck most recently registered to GALL. Because GALL's assets were subject to a federal tax lien at the time, Christianson had not transferred them to Titan. Titan reported the accident to CHI, and Titan's workers' compensation insurer, AIG, was notified. AIG then provided workers' compensation benefits to Jones.

On September 14, 2004 Jones filed a personal liability lawsuit against the manufacturer of the hydroseeder (Bowie Industries, Inc.) and Christianson individually and doing business as GALL. Titan was not a defendant. As to Christianson, the lawsuit alleged negligence in transferring the hydroseeder to Titan, loaning a defective hydroseeder to Titan, making modifications to the hydroseeder that contributed to its defects, and failing to warn Jones of the inherent dangers involved in operating the machinery. Christianson contacted his lawyer, and Christianson's defense in Jones's personal injury claim was tendered to Titan's general liability insurer, Great Divide.

Great Divide replied to the tender by letter dated September 24, 2004. The letter was addressed to Christianson and Titan; it stated that Great Divide was investigating the claim and that, in the interim, Christianson would have to file an appropriate response to Jones's lawsuit and pay for his own defense. The letter stated that should Great Divide determine that it did have a duty to provide coverage or a defense, Christianson would be reimbursed for the reasonable fees and costs of his defense. The letter then referred to and quoted the policy's exclusion of coverage for claims of bodily injury to an employee of the insured. The letter stated that "[s]hould it be determined or confirmed through the investigation . . . that Keith Jones was an employee of Titan Enterprises, LLC . . . at the time of the incident, Great Divide Insurance Company may refuse to defend or indemnify you for this matter." Although

Great Divide did not then, or ever, agree to defend Christianson or reimburse his defense costs with respect to the Jones lawsuit, the letter asserted that Great Divide was reserving all its rights under its policy.

Christianson soon began personally incurring legal fees in defending himself in the Jones lawsuit.

In March 2006, about 18 months later, Great Divide sent Christianson a letter denying coverage and filed a complaint in federal court seeking a judgment declaring that its policy did not cover Christianson for Jones's claims. In November 2006 Dennis's deposition was taken in Great Divide's declaratory judgment action. Dennis took CHI's Titan file to the deposition and agreed that it contained a list of vehicle registrations that Dennis would use "to create an application with." Dennis also testified that if Christianson was using GALL vehicles in his Titan business, CHI should have told Christianson to register them to Titan. He agreed that auto coverage listing only Titan as an owner might well exclude liability coverage for GALL. Asked whether, because some of the vehicles appeared to be owned by GALL, CHI attempted to make sure GALL was an insured, he answered, "no."

The Jones personal injury trial was scheduled to begin in August 2007. In March 2007 Christianson tendered defense of the Jones lawsuit to Titan's auto insurer, Cascade National.[2] In July 2007 the federal court declared that Great Divide's policy did not cover Jones's claims against Christianson. That same month, Christianson tendered his defense in Jones's personal injury lawsuit to CHI. CHI declined the tender. In October Cascade National, the auto insurer, filed a declaratory judgment complaint

---

[2] Cascade National was taken over by the Alaska Insurance Guaranty Association, but for the sake of continuity we refer to the auto insurer as Cascade National.

against Christianson; in November Cascade National obtained a declaration of no coverage.

The Jones personal injury trial eventually commenced in February 2008. Christianson and GALL prevailed at trial. The superior court entered a directed verdict for Christianson and the jury returned a verdict for GALL. This court later reversed the defendants' judgments.[3]

## B.    Malpractice Lawsuit Against CHI

Christianson sued CHI on August 6, 2008. His complaint alleged that CHI and Dennis breached their professional duty of care in exposing him to the costs of litigation and the risk of an uninsured judgment, and therefore caused him "to spend money in his own defense." It also alleged that Christianson had incurred over $100,000 in attorney's fees in defending against Jones's claims and the insurers' declaratory judgment actions. CHI's answer denied liability. In 2010 CHI moved for summary judgment, arguing that Christianson's malpractice action was barred by AS 09.10.053 because the statute of limitations began to run more than three years before Christianson sued CHI in August 2008. CHI argued that the statute had begun to run no later than October 2004, after Christianson was sued, was informed that it was questionable whether the insurance policies CHI had obtained for Titan would cover the Jones lawsuit, and began incurring attorney's fees. Christianson's opposition argued that a genuine issue of material fact existed as to when he discovered the elements of his claim against CHI. Christianson did not contend that the doctrine of equitable tolling applied.

Before deciding CHI's summary judgment motion, Superior Court Judge Frank A. Pfiffner held an evidentiary hearing to determine when the statute of limitations

---

[3]    In 2012 this court reversed the superior court's directed verdict for Christianson, reversed the defendants' judgments, and remanded for retrial of most of Jones's claims. *Jones*, 282 P.3d at 340.

began to run. The court heard the testimony of Christianson and his lawyer, reviewed exhibits that included passages from Dennis's deposition, and read Christianson's deposition. The court granted CHI's summary judgment motion after making findings of fact about the contents and effect of the September 24, 2004 letter and what information Christianson would have learned had he then made an inquiry. The court made the following findings about the letter and its effect:

> On [September 24, 2004], Great Divide sent Mr. Christianson a letter with several critical pieces of information. First, Great Divide informed Mr. Christianson that it would be "necessary for [him] to protect [his] own interest in regard to the Complaint." And that he "should consider consulting with an attorney to file the appropriate response to the Complaint." This is critical because Great Divide was effectively disclaiming its duty to defend Mr. Christianson. Under Titan's general liability policy with Great Divide, it had a "duty to defend the insured against 'any' suit seeking [personal injury] damages." . . . The September 24th letter disclosed Great Divide's preliminary determination that the hydroseeder incident did not trigger even the duty to defend. At least for the time being, Mr. Christianson was on his own and began incurring actual damages in the form of litigation costs.
>
> . . . .
>
> Second, Great Divide noted that [Christianson's] policy "specifically excludes coverage for 'bodily injury' to an 'employee' of the insured arising out of the course and scope of employment." The letter identifies the policy at issue as the "Commercial General Liability policy *issued to Titan* . . ." and informed Mr. Christianson that "[s]hould it be determined or confirmed through the investigation of the above referenced incident that Keith Jones was an employee of Titan Enterprises, LLC dba: Titan Top Soil at the time of the incident, Great Divide Insurance Company may refuse to defend or indemnify you for this matter." Although Great

Divide had not confirmed Mr. Jones's employment status, Mr. Christianson was fully aware that Mr. Jones was Titan's employee. He was on notice of the precise reason Great Divide eventually declined to indemnify his loss or reimburse legal costs. At that point it was evident that there were potential coverage gaps for Mr. Christianson and his non-Titan entities. The September 24, 2004, letter is a reasonably clear indication that the Great Divide policy did not cover entities other than Titan and did not cover Titan employees injured in the scope of employment. A reasonable person in Mr. Christianson's circumstances would have had enough information to alert him that he should begin an inquiry to protect his rights.

. . . .

. . . The letter was, in effect, a disclaimer of Great Divide's duty to defend. The letter also drew [Mr. Christianson's] attention to gaps in his coverage. Specifically, the letter informed Mr. Christianson of the possibility that Great Divide would deny both defense and indemnification if it confirmed that Mr. Jones was a Titan employee. Mr. Christianson knew that Mr. Jones was a Titan employee and was on notice of the potential coverage gaps. . . .

. . . At that point [upon receipt of the September 24, 2004 letter], Mr. Christianson was aware of potential coverage gaps, despite the fact he had asked his broker to purchase all-inclusive insurance.

(Emphasis in original.)

The court then made these findings about what an inquiry "at that point" would have revealed:

[A]n inquiry at that point would have revealed what Mike Dennis allegedly conceded at his deposition: that CHI failed to advise Mr. Christianson of the need to obtain coverage for the continued operation of GALL's hydroseeder. The inquiry

would also have revealed that Cascade National was unwilling to cover the loss.

The superior court consequently ruled that the applicable three-year statute of limitations had begun running on September 24, 2004, the date of Great Divide's initial letter to Christianson, and that the limitations period had expired before Christianson commenced suit in August 2008. It therefore dismissed Christianson's complaint.

Christianson appeals.

## III. STANDARD OF REVIEW

When the superior court holds an evidentiary hearing to resolve factual disputes about when a statute of limitations began to run, we review the resulting findings of fact for clear error.[4] A factual finding is clearly erroneous if, after reviewing the entire record in the light most favorable to the party prevailing below, we are left with a definite and firm conviction a mistake has been made.[5] We reverse a trial court's factual findings only when we are left with a definite and firm conviction a mistake has been made.[6] "[I]t is a legal question whether undisputed facts establish that a plaintiff is on inquiry notice."[7] We give de novo review to rulings on legal questions.[8] We

---

[4]     *Williams v. Williams*, 129 P.3d 428, 431 (Alaska 2006).

[5]     *John's Heating Serv. v. Lamb*, 129 P.3d 919, 922 (Alaska 2006) (citations omitted).

[6]     *Williams v. GEICO Cas. Co.*, 301 P.3d 1220, 1225 (Alaska 2013) (quoting *In re Protective Proceedings of W.A.*, 193 P.3d 743, 748 (Alaska 2008)).

[7]     *Egner v. Talbot's, Inc.*, 214 P.3d 272, 277 (Alaska 2009).

[8]     *Id.*

review for clear error fact findings regarding the reasonableness of an inquiry.[9] It is a legal question whether a court has failed to make necessary findings regarding the reasonableness of a claimant's inquiry.[10]

## IV.    DISCUSSION

The ultimate issue here is whether the superior court correctly decided that Great Divide's initial letter put Christianson on inquiry notice and that the statute of limitations on Christianson's malpractice claim against CHI therefore began to run when Great Divide sent him that letter. Christianson agrees that "the application of the discovery rule controls the result in this appeal," but advances various arguments to support his contention that the court erred factually and legally. He also argues that the court erred in resolving the "reasonable inquiry" issue.

Alaska applies a three-year statute of limitations for professional malpractice actions.[11] A statute of limitations usually begins to run upon the occurrence of the last element essential to the cause of action.[12] But Alaska has adopted the discovery rule, which can affect when the applicable statute begins to run.[13] Under the discovery rule, a cause of action accrues when the plaintiff has "information sufficient

---

[9]    *Cf. Pedersen v. Zielski*, 822 P.2d 903, 908 (Alaska 1991) (holding that issues of material fact existed concerning reasonableness of inquiry).

[10]    *See Beals v. Beals*, 303 P.3d 453, 459 (Alaska 2013) (holding that sufficiency of superior court's findings is subject to de novo review).

[11]    AS 09.10.053. *See Preblich v. Zorea*, 996 P.2d 730, 733-34 (Alaska 2000) (applying statute of limitations for contract claims to malpractice case).

[12]    *Greater Area Inc. v. Bookman*, 657 P.2d 828, 829 (Alaska 1982).

[13]    *Id.*

to alert a reasonable person to the fact that he has a potential cause of action."[14] We look to the date when "a reasonable person in like circumstances would have enough information to alert that person that he or she has a potential cause of action or should begin an inquiry to protect his or her rights."[15] *Cameron v. State* articulated the discovery rule as follows:

> (1) a cause of action accrues when a person discovers, or reasonably should have discovered, the existence of all elements essential to the cause of action;
>
> (2) a person reasonably should know of his cause of action when he has sufficient information to prompt an inquiry into the cause of action, if all of the essential elements of the cause of action may reasonably be discovered within the statutory period at a point when a reasonable time remains within which to file suit.[16]

If a person makes a reasonable inquiry that does not reveal the elements of the cause of action within the limitations period while a reasonable time remains within which to file suit, the discovery rule tolls the running of the limitations period until a reasonable person would obtain actual knowledge of, or would again be prompted to inquire into, the cause of action.[17]

---

[14]     *Preblich*, 996 P.2d at 734 (quoting *Pedersen*, 822 P.2d at 908).

[15]     *Lee Houston & Assocs., Ltd. v. Racine*, 806 P.2d 848, 851 (Alaska 1991) (quoting *Mine Safety Appliances Co. v. Stiles*, 756 P.2d 288, 291 (Alaska 1988)).

[16]     822 P.2d 1362, 1366 (Alaska 1991).

[17]     *Id*. at 1367 (citing *Pedersen*, 822 P.2d at 908).

The discovery rule therefore simply determines when the cause of action accrues for purposes of triggering the applicable limitations period.[18] We have stated that "the discovery rule operates only to lengthen — and never to shorten — the limitations period."[19] As we will see, that principle does not prevent us from affirming the judgment.

The first question is whether, as the superior court ruled, Christianson was put on inquiry notice by Great Divide's September 24, 2004 letter. That legal question turns on whether the superior court committed clear error in finding the facts that led it to conclude that Christianson had "enough information to alert him that he should begin an inquiry to protect his rights." The next question is whether Christianson made a reasonable inquiry that did not timely reveal all elements of his cause of action. That question turns on whether the superior court committed clear error in finding facts bearing on what Christianson would have learned had he made an inquiry after receiving the September 24, 2004 letter. It also turns on whether the court failed to make fact findings material to the reasonable-inquiry issue and therefore committed legal error.

---

[18] *Id.* at 1365 n.5 (characterizing discovery rule as "specifying the meaning of 'accrual' under the statute").

[19] *Gefre v. Davis Wright Tremaine, LLP*, 306 P.3d 1264, 1274 (Alaska 2013) (citation omitted). The dissenting opinion contends that affirming CHI's judgment violates this principle. That contention mistakenly assumes that the discovery rule cannot establish an accrual date earlier than the date the claimant first has actual knowledge of all elements of his cause of action. If the discovery rule applies, "[w]e have held the inquiry-notice date, rather than the actual-notice date, is generally the date from which the statutory period begins to run." *Id.* at 1275.

A. **The Superior Court Did Not Commit Clear Or Legal Error In Ruling That Christianson Was Put On Inquiry Notice.**

1. **The court did not clearly err in finding facts regarding inquiry notice.**

After conducting the evidentiary hearing, the superior court made findings of fact about the information Christianson possessed when or soon after he received the September 24, 2004 letter. We quoted its pertinent findings above, in Part II.B.

In summary, the court found that the letter told Christianson he had to "protect [his] own interest" and should consider consulting an attorney to respond to Jones's complaint. It found that the liability insurer had effectively disclaimed its duty to defend Christianson. It found that the letter disclosed a "preliminary determination" that the accident did not trigger the duty to defend. It found that the letter indicated that the policy did not cover entities other than Titan and did not cover claims of Titan employees injured at work. It found that upon receipt of the letter, "Christianson was aware of potential coverage gaps, despite the fact he had asked his broker to purchase all-inclusive insurance."[20] It found that this was sufficient to alert a reasonable person in

_____

[20] The "coverage gap" was the absence of liability insurance covering Christianson against the claims in Jones's personal injury lawsuit. The superior court described the Great Divide gap as resulting from policy provisions that covered Titan and Christianson with respect to Titan's activities, but not other entities, and excluded claims brought by Titan employees (such as Jones). Had liability insurance covered the GALL vehicle and hydroseeder or covered Christianson when he loaned GALL's vehicles to Titan, the insurer would have had a duty to defend Christianson against Jones's claims.

The superior court did not precisely describe the gap in the auto policy Cascade National issued to Titan. It seems to have arisen out of the fact that the truck carrying the hydroseeder was most recently registered to GALL, not Titan. Apparently no auto policy covered GALL at the time of the accident.

Christianson's position that he should begin an inquiry to protect his rights. And it found that Christianson began incurring actual damages in the form of litigation costs.

Christianson disputes these findings. We review them for clear error.[21] "On appeal, findings of fact by a trial court may not be disturbed unless they are clearly erroneous."[22]

But before beginning that analysis, we consider the undisputed facts in their most elemental form. As of the fall of 2004, Christianson had expected CHI to procure insurance coverage for his landscaping activities. He knew Jones was suing him for reasons connected with those activities. He knew Great Divide, following his tender, had not provided him a defense. He knew Great Divide had identified two policy provisions that potentially foreclosed coverage. He knew he was incurring defense costs. Those circumstances were enough to put him on notice that he needed to make an inquiry to determine why Great Divide was not providing him a defense — including asking whether CHI had failed to secure adequate insurance for his businesses.[23] These undisputed circumstances establish as a matter of law that Christianson had a duty to make a reasonable inquiry to protect his interests.

*Gudenau & Co. v. Sweeney Insurance, Inc.* is analogous.[24] That case involved a denial of coverage under an insurance policy obtained through a broker that

---

[21]    *Williams v. Williams*, 129 P.3d 428, 431 (Alaska 2006).

[22]    *Griffin v. Weber*, 299 P.3d 701, 704 (Alaska 2013) (citing *In re Protective Proceedings of W.A.*, 193 P.3d 743, 748 (Alaska 2008)).

[23]    *See Palmer v. Borg-Warner Corp.*, 818 P.2d 632, 634 (Alaska 1990) (holding that plaintiff has duty to "investigate *all* potential causes of action" (emphasis in original) (citing *Mine Safety Appliances Co. v. Stiles*, 756 P.2d 288, 292 (Alaska 1988))).

[24]    736 P.2d 763 (Alaska 1987).

had promised the insured a policy covering virtually all damage to the property at issue.[25] We held that the insurer's letter to the insured, "which drew the reader's attention to the policy's structural defect exclusion clause," was "sufficient to alert a reasonably diligent plaintiff" to the possibility of a gap in coverage and, accordingly, to the possibility of the broker's potential breach of warranty.[26]

Once Christianson began incurring defense costs, all elements of the alleged tort — the claim he filed almost four years later — were present: duty (to use adequate professional skill); breach of the duty (in failing to secure coverage allegedly requested or to recommend that GALL get coverage); causation (of the coverage gap by the alleged breach); and damages (from incurring defense costs).[27]

Moreover, the evidence persuades us that the superior court's findings of fact concerning the content and effect of the letter are not clearly erroneous. After Christianson tendered his defense to Great Divide, it sent him the September 24, 2004 letter telling him he would be responsible for his own defense while it investigated whether coverage existed. The letter thus communicated Great Divide's present refusal to defend Christianson. Great Divide's contemporaneous conduct confirmed this message: It did not in fact defend him.

The letter also called attention to the employee exclusion and stated: "Should it be determined or confirmed through the investigation . . . that Keith Jones was an employee of Titan Enterprises, LLC . . . at the time of the incident, Great Divide

---

[25]    *Id.* at 765-66.

[26]    *Id.* at 767.

[27]    *See Belland v. O.K. Lumber Co.*, 797 P.2d 638, 640 (Alaska 1990) (citing *Linck v. Barokas & Martin*, 667 P.2d 171, 173 n.4 (Alaska 1983)) (setting out elements of professional negligence claim).

Insurance Company may refuse to defend or indemnify you for this matter." Christianson knew Jones was a Titan employee and therefore knew Great Divide's employee exclusion was factually applicable to Jones's personal injury claims. Christianson has not discussed any theory that might have justified a reasonable belief in 2004 that this exclusion was inapplicable on legal or factual grounds. He has likewise not discussed any theory that would have justified a reasonable belief Great Divide might have a change of heart.

Christianson also knew GALL, not Titan, owned the hydroseeder and the truck carrying it. Christianson knew he had sought coverage for the equipment that was to be used in Titan's operations and believed he had talked with CHI about GALL. He knew he had given CHI his vehicle registrations, including those for vehicles owned by GALL, and thus the registration for the equipment central to Jones's lawsuit against Christianson. And from his communications with CHI when the insurance was being placed, he must have known the facts that later caused him to testify that CHI had not told him that he should insure GALL or vehicles registered to GALL. He does not claim CHI ever told him that the truck or hydroseeder was covered by any liability insurance obtained by CHI.[28]

Normally no duty to inquire can be imposed under the discovery rule unless the plaintiff should know he has suffered some loss attributable to the defendant,[29] or unless he realizes he has been injured and his injury may be connected to the defendant's

---

[28]     In contrast, the broker in *Gudenau & Co.* reassured the insured that the policy provided coverage. *Gudenau & Co.*, 736 P.2d at 766.

[29]     *Cf. Jarvill v. Porky's Equip., Inc.*, 189 P.3d 335, 340-41 (Alaska 2008).

conduct.[30] But Christianson knew he was personally incurring defense costs and knew it was because the insurer on the general liability policy obtained by CHI was not defending him.

The dissenting opinion contends that *Jarvill v. Porky's Equipment, Inc.*[31] is similar and controls. That case is instructive, but not for the reasons the dissent advances. *Jarvill* concerned a "product defect claim" arising out of a commercial contract to purchase a boat.[32] Although an inspector had warned the buyer that the boat's hull was too thin, the boat performed as expected until it sank.[33] We held that no tort claim accrued until the boat sank; until then, the purchaser had suffered no tort damages, even though he might have suffered contract damages by "receiving a boat that was 'not serviceable.' "[34] In this case, incurring expenses of a defense was equivalent to the sinking of the boat; both satisfied the damages element of a tort claim.

Christianson does not contend that he was unaware that Great Divide's conduct, as described in its September 24, 2004 letter, was causing him to incur significant expenses. He does not appeal the superior court's finding that "[a]t least for the time being, Mr. Christianson was on his own and began incurring actual damages in the form of litigation costs." Christianson began to incur attorney's fees almost immediately. He was therefore aware he was presently suffering an out-of-pocket loss;

---

[30]    *Cf. John's Heating Serv. v. Lamb*, 129 P.3d 919, 925 (Alaska 2006) (holding that plaintiffs who were on inquiry notice furnace was causing soot problems were not necessarily on inquiry notice it was exposing them to carbon monoxide).

[31]    189 P.3d 335 (Alaska 2008).

[32]    *Id.* at 340.

[33]    *Id.* at 339.

[34]    *Id.* at 340.

he was also aware Great Divide might not reimburse him, and indeed would not do so unless it chose to waive the policy provisions it had identified.[35] His loss was large enough to put him on notice of the damage element of a potential claim against CHI.[36] That he could not know in late 2004 what his damages might eventually total did not prevent his cause of action from accruing.[37]

The dissent contends that there was only a "potential future injury" and that Christianson "had not yet suffered an injury attributable to CHI." These contentions are incorrect. He *was* suffering an injury attributable to CHI's alleged malpractice because

---

[35]     Courts in other states have determined that incurring attorney's fees constitutes damages for purposes of triggering the statute of limitations in a malpractice case against an insurance broker. *See Am. Home Assurance Co. v. Osbourn*, 422 A.2d 8, 15-16 (Md. App. 1980); *Spurlin v. Paul Brown Agency, Inc.*, 454 P.2d 963, 964 (N.M. 1969). *See also Wallace v. Helbig*, 963 S.W.2d 360, 360-61 (Mo. App. 1998) (holding that insured's malpractice claim accrued at end of declaratory judgment action against insurer; before that, insured had suffered no damages because insurer was paying for defense of underlying lawsuit). *Cf. Int'l Mobiles Corp. v. Corroon & Black/Fairfield & Ellis, Inc.*, 560 N.E.2d 122, 124-25 (Mass. App. 1990) (holding that statute of limitations did not begin to run until judgment was entered against insured because until then insured had not suffered a loss, but noting fact insurer paid for insured's defense "bears decisively on the outcome"). Although the dissent distinguishes these cases and *Gudenau & Co.* from Christianson's case because they concerned a "definitive denial" of coverage, this distinction is irrelevant here. Great Divide's letter correctly identified policy provisions relevant to defense of Jones's lawsuit against Christianson: (1) the employee exclusion, applicable because Jones was a Titan employee, and (2) identification of Titan — not GALL or Christianson's other businesses — as the insured. The dissent does not explain how a "definitive denial" would have given Christianson more information than he received in the September 2004 letter.

[36]     Christianson does not argue that the expenses he began incurring were insufficiently large to put him on notice in 2004 he was suffering a loss.

[37]     *Sopko v. Dowell Schlumberger, Inc.*, 21 P.3d 1265, 1272 (Alaska 2001) (holding that lack of knowledge of full extent of injury was irrelevant in application of discovery rule).

he was paying expenses an insurer would have borne had CHI secured the coverage Christianson claimed he had expected.

Nor does the theoretical possibility his out-of-pocket defense expenses might be reimbursed in the future obviate the fact Christianson was then suffering an actual injury that triggered the duty of inquiry as a matter of law. The possibility an insurer might later indemnify an insured party does not stop the statute of limitations from running once the party has been injured by the insurer's failure to defend.

The dissent argues that Christianson could not then (in the fall of 2004) have sued CHI for malpractice. This contention mis-comprehends the discovery rule, which presupposes that a person who knows enough to have a duty to inquire may not yet know enough to file suit — that is, he has not yet discovered all of the existing elements of his cause of action. The issue to be decided by the superior court was whether Christianson had sufficient knowledge as of the fall of 2004 to require him to inquire whether he had a cause of action related to Great Divide's refusal to defend him in the Jones litigation.[38] That issue did not turn on whether Christianson then could have filed suit against CHI. The dissent's contention also fails to recognize that, as the superior court implicitly found, reasonable inquiry would have soon revealed the circumstances supporting the same malpractice complaint Christianson actually filed almost four years later, and thus all elements of his claim.[39]

---

[38] In applying the discovery rule, the superior court focused on September 24, 2004, the date of Great Divide's letter. Although there is no evidence Christianson had yet suffered damages when he received the September 24 letter, it is undisputed that he soon began incurring defense costs.

[39] In arguing that no tort claim had yet accrued, the dissent relies on *Thomas v. Cleary*, 768 P.2d 1090 (Alaska 1989). In holding that the taxpayer had no cause of action against accountants who gave the taxpayer negligent advice, this court thought it

(continued...)

## 2. The superior court did not err in finding that the September 24, 2004 letter alerted Christianson to the fact that Great Divide would not pay for his defense.

Christianson advances three main contentions in arguing that the superior court misinterpreted the September 24, 2004 letter.

He first contends that the letter did not disclaim the duty to defend. We conclude that the superior court did not misinterpret the letter and did not clearly err in characterizing it as disclaiming a duty to defend Christianson. The letter on its face conveyed that message, even though it purported to reserve a future right to reimburse reasonable defense costs following Great Divide's coverage investigation. The letter made it clear that the insurer was not providing Christianson a defense in Jones's personal injury lawsuit, and instead told Christianson to defend himself.

Christianson notes that the September 24, 2004 letter held out the possibility that Great Divide would reimburse him for reasonable defense costs if it concluded after investigation that there was coverage. But that message does not negate the letter's meaning or effect, and Christianson himself apparently read the letter as presently denying him a defense, because he promptly retained counsel to defend him,

---

[39](...continued)
crucial that the IRS had never assessed additional taxes against the taxpayer. *Id*. at 1092-93. Because the taxpayer had consequently incurred no damages, the cause of action was unripe. *Id*. *Thomas* is distinguishable because Christianson did incur damages. The distinction is confirmed by the *Thomas* court's description of a case it cited in support of its holding, *Godfrey v. Bick & Monte*, 713 P.2d 655, 657 (Or. App. 1985). *Thomas* described *Godfrey* with the following parenthetical: "(plaintiff was damaged when he incurred attorney and accounting fees in his attempt to resolve the IRS problems)." *Thomas*, 768 P.2d at 1093. *Thomas*'s reliance on *Godfrey* confirms that incurring attorney's fees can satisfy the damages element of a professional tort claim. That conclusion is especially germane to a claim that a broker's allegedly negligent failure to obtain coverage entitling the insured to a defense in a personal injury lawsuit caused damages measured by the insured's costs in defending himself.

at substantial personal expense.[40] The possibility Great Divide, after investigating, might someday acknowledge coverage would not have excused a reasonable person from realizing that Great Divide's initial denial was presently causing him to suffer significant financial injury and that CHI had potentially breached professional duties.[41] The superior court did not misinterpret Great Divide's letter as failing to provide a present defense and as triggering the duty to inquire.

Similarly, Christianson asserts that the letter's discussion of exclusions was not unusual and did not inform him that his tender would ultimately be rejected. He also asserts that his vigorous defense in Great Divide's declaratory judgment action shows he genuinely believed he was covered, and that the federal court's later declaration of no coverage did not prove that his position was frivolous or that he had believed it had no merit. These assertions do not demonstrate any error by the superior court in interpreting the letter and its effect on a reasonable person; the superior court simply had to decide whether Christianson was on inquiry notice. Christianson's subjective belief did not preclude a finding of fact that the letter would cause a reasonable person with Christianson's knowledge to realize there was a question about whether the broker was responsible for the potential coverage gap identified in Great Divide's letter. Christianson's alleged "good faith belief" in contesting Great Divide's 2006 declaratory

---

[40]    His malpractice complaint against CHI alleged that he and GALL had incurred "well over" $100,000 in attorney's fees in litigating the Jones case and the two declaratory judgment actions.

[41]    For the same reason, the dissent's observation that Great Divide "could have decided" in the future to provide a defense misconceives the discovery rule and the duty to inquire. It also ignores the extreme improbability, as of 2004, that the bases for Great Divide's unwillingness to defend were factually and legally invalid and that Christianson did not know the relevant facts. The dissent does not argue that the facts would have caused a reasonable person to think that the Great Divide policy actually covered Jones's claims.

judgment action does not demonstrate that the court clearly erred in interpreting the letter or in finding that it put Christianson on inquiry notice in 2004. Moreover, Christianson has offered no analysis of the September 24 letter that would plausibly demonstrate any reason to think, in 2004 or now, that Great Divide's policy actually covered him in Jones's lawsuit. And to the extent he argues that the superior court erred in failing to consider his good faith belief, he has not brought to our attention any evidence that would permit a finding or conclusion that his professed belief was reasonable. He has raised no dispute here (nor did he in the superior court) about either the validity of Great Divide's reading of its policy language or Great Divide's understanding of the facts (including Jones's employment status). His subjective belief was at most one of the circumstances bearing on whether he was on inquiry notice. The other circumstances overwhelmingly supported the superior court's findings of fact and inquiry-notice ruling. Christianson has not demonstrated either clear or legal error.

Second, Christianson contends that Great Divide's March 15, 2006 letter finally denying any duty to defend shows that Great Divide's September 24, 2004 letter had not denied a duty to defend. But neither the sending nor the content of the 2006 letter renders clearly erroneous the superior court's interpretation of the 2004 letter and its effect on the application of the discovery rule.[42]

And, notwithstanding the dissent's contentions, the insurer's actual failure to defend Christianson in 2004 made irrelevant to the inquiry-notice issue any contention

---

[42]    *See Liberty Transp., Inc. v. Harry W. Gorst Co.*, 280 Cal. Rptr. 159, 165-66 (Cal. App. 1991), *overruled on other grounds by Adams v. Murakami*, 813 P.2d 1348, 1354-55 (Cal. 1991) (affirming trial court's interpretation of letter as denial of coverage even though letter asked for information about loss and indicated willingness to investigate information further).

that the September 24, 2004 letter did not convey a final, absolute refusal to defend.[43] No such refusal was required here to trigger a duty to inquire.

Third, Christianson contends that insurance companies rarely accept a tender without a reservation of rights. But Great Divide did not accept his tender and defend him under a reservation; it instead told him he should defend himself, causing him to begin suffering damages.

The superior court's findings of fact about what the September 24 letter said are not clearly erroneous.

### 3. The superior court did not erroneously fail to find facts regarding Christianson's good-faith belief that he was covered in the Jones lawsuit.

Christianson argues that, despite the letter, he was not put on inquiry notice.

In addition to the letter, the superior court's inquiry-notice ruling relied on findings that Christianson had asked his broker to purchase "all-inclusive" insurance; that Christianson knew Jones was a Titan employee; and that Great Divide's failure to defend him was causing him to incur "actual damages in the form of litigation costs."

---

[43]    The dissent describes the superior court's findings as interpreting the letter as "an actual denial of coverage" and as "equivalent" to denying the duty to indemnify. That description is at least in part incorrect, because the superior court did not interpret the letter as broadly denying "coverage" or as denying the duty to indemnify. It instead found that the letter denied a duty to defend.

That description also raises an immaterial dispute. The finding the court did make was the foundation for the court's inquiry-notice ruling. Any dispute about whether the letter also denied a duty to indemnify is irrelevant to this appeal because the letter failed to accept the defense tender. A liability insurer's duty to defend is broader than its duty to indemnify. *See, e.g.*, *Afcan v. Mut. Fire, Marine & Inland Ins. Co.*, 595 P.2d 638, 645 (Alaska 1979) ("[T]he insurer may have an obligation to defend although it has no ultimate liability under the policy."). Whether or not its letter also denied coverage or a duty to indemnify, Great Divide's failure to defend Christianson would have breached its defense duty if its policy covered Christianson.

These findings are not clearly erroneous, and Christianson does not challenge them on appeal.

Christianson seems to argue that the court should have found additional facts that he thinks were relevant to the inquiry-notice issue: that he had a good-faith belief he was covered when he contested Great Divide's declaratory judgment action; that Dennis did not admit, until he was deposed in 2006, he had failed to recommend purchasing needed insurance, and had instead told Christianson he and his companies were "fully covered" for Jones's injury; and that it was not until the Cascade National policy was "made available" at Dennis's deposition that Christianson learned that an auto coverage form listed the hydroseeder, resulting in Christianson's tender to Cascade National.

Christianson's arguments have little or no relevance to the inquiry-notice issue. And they do not show that the superior court committed any legal or factual error.

We assume without deciding that a broker's reassurances that could persuade a reasonable client that the broker had obtained the needed insurance coverage or had been professionally faultless could be relevant to the inquiry-notice issue.[44] Such reassurances might delay imposing a duty to investigate a possible claim against the broker.

But there is no evidence of such reassurances here. Christianson asserts that CHI, through Dennis, had represented that Christianson and his companies were fully covered for Jones's injury. The testimony he cites only concerns reassurances about the workers' compensation coverage, not the accuracy of Great Divide's letter or

---

[44]     *Cf. Sharrow v. Archer*, 658 P.2d 1331, 1334 (Alaska 1983) (agreeing in dictum with superior court that nature of doctor-patient relationship justified some reliance by plaintiff on doctor's reassurances).

the application of the employee exclusion to the Jones lawsuit.[45] Christianson refers us to no evidence CHI reassured him that it had obtained liability insurance covering Christianson against the claims made in Jones's lawsuit. He refers us to no evidence of reassurances that CHI had discharged the duties identified in Christianson's 2008 malpractice complaint.

No reassurances based on workers' compensation could have obviated the duty to inquire: Despite the workers' compensation remedy and the exclusive liability statute, Jones had sued Christianson, causing him to incur defense costs. For purposes of the discovery rule, no reassurances concerning workers' compensation could have been so compelling that the superior court could be regarded as having erred legally or factually.

Moreover, if Dennis told Christianson he was "covered" by workers' compensation, it was potentially relevant only to the merits of Jones's lawsuit; it was irrelevant to the question of whether Great Divide's exclusion applied to Jones's claims or to the question of whether the broker had breached the duties Christianson later claimed it owed him. No insurer, including the workers' compensation insurer, was defending Christianson against Jones's lawsuit; a reassurance that the exclusive liability statute barred Jones's lawsuit could not have satisfied a reasonable person, because it did not address Christianson's exposure to substantial defense expenses. Consequently, a defendant raising the exclusive liability issue as a defense to the tort suit should have

---

[45] The Alaska Workers' Compensation Act's exclusive liability statute, AS 23.30.055, would have prevented Jones, a Titan employee who received workers' compensation benefits for the injuries suffered during his employment, from suing Titan for his personal injuries. Christianson does not claim that the statute prevented Jones from suing Christianson in his capacity as the owner of the hydroseeder or GALL. Nor does he claim that anything CHI told him caused him to think CHI was without fault.

realized that the defense might not be successful, that CHI's reassurance might be incorrect,[46] and that no liability insurer was paying his tort defense costs.

Failing to find facts relevant to a material, factual dispute could be legal error,[47] but the propositions Christianson raises do not demonstrate that the court's findings of fact were clearly erroneous or legally insufficient. Nor do they demonstrate that the court's legal conclusions were erroneous. Given what the court did find about the message communicated by the letter and the facts known to Christianson, a reasonable person in Christianson's position would have realized there was a significant possibility CHI had not discharged its professional duties to him. The propositions Christianson advances do not rebut that conclusion.

The superior court concluded that a reasonable person in Christianson's "circumstances would have had enough information to alert him that he should begin an inquiry to protect his rights." It held that Christianson "had a duty to investigate all potential claims, including those against his broker." Because the circumstances put Christianson on notice of the likelihood there was a coverage gap, of the possibility his broker was responsible for that gap, and of the certainty he was suffering financial harm, the court's inquiry-notice rulings were not factually or legally erroneous.

It is irrelevant there were other possible explanations, not implicating CHI, why Christianson was incurring defense costs. As we stated in *Gudenau & Co. v. Sweeney Insurance, Inc.*,

---

[46]     AS 23.30.055 was not the basis for Christianson's directed verdict in the Jones lawsuit. *Jones v. Bowie Indus., Inc.*, 282 P.3d 316, 323 (Alaska 2012). And Christianson, in arguing for affirmance in Jones's appeal from Christianson's directed verdict, did not contend that Jones's tort suit against Christianson was barred by that statute.

[47]     *See Lowery v. McMurdie*, 944 P.2d 50 (Alaska 1997) (remanding for failure to make adequate findings).

To the extent that the insurance carrier offered different interpretations of the policy language, Gudenau's cause of action was not obscured, but rather two potential causes of action were revealed: one against the carrier, another against the broker. The two conflicting interpretations were sufficient to alert Gudenau to the need to take action to protect its rights.[48]

The existence of other possibilities did not excuse or satisfy a duty to inquire.[49]

This does not mean that Christianson then had to know enough either to sue CHI for professional malpractice or to decide whether Great Divide had erroneously interpreted its insuring duties. For purposes of applying the discovery rule, the superior court only had to decide whether Christianson knew enough to put him on notice that he should inquire whether he had a cause of action against CHI.[50] Similarly, in discussing this discovery-rule dispute, we do not mean to suggest that CHI was actually at fault. The only question pertinent to this part of our analysis is whether the superior court, having considered the evidence, erred in deciding that a reasonable person who knew what Christianson knew or should have known about his insurance expectations, his dealings with CHI, the circumstances of Jones's accident, and his losses, was on notice in 2004 of a need to make diligent inquiry into whether CHI had been negligent.

We hold that the superior court did not err in holding that Christianson was on inquiry notice.

___

[48]    736 P.2d 763, 767 n.6 (Alaska 1987).

[49]    *Id*. at 768 (holding that statute of limitations began to run when plaintiff should have discovered exclusion clause).

[50]    *See, e.g.*, *Mine Safety Appliances Co. v. Stiles*, 756 P.2d 288, 291 (Alaska 1988) (holding inquiry notice exists "when a reasonable person has enough information to alert that person that he or she has a potential cause of action or should begin an inquiry to protect his or her rights").

**B.** **The Superior Court Did Not Erroneously Resolve The Issue Of Reasonable Inquiry And Did Not Fail To Consider Christianson's Efforts.**

The superior court ruled that because Christianson was on inquiry notice and because a reasonable inquiry would have revealed the essential elements of the cause of action, the statute of limitations began to run on September 24, 2004.

Under the discovery rule, a cause of action "accrues if, within the statutory period, the essential elements [of the cause of action] may reasonably be discovered."[51] In considering an equivalent malpractice claim, we held in *Gudenau & Co.* that despite an insured's uncertainty about whether either its property insurer or its insurance broker was responsible for a coverage gap, the statute of limitations on Gudenau's claim against its broker began running on the date its insurance company sent a letter denying coverage.[52]

The superior court here correctly applied the discovery rule when it held that the statute of limitations began running when Christianson learned information that should have caused him to make an inquiry that would have discovered the essential elements of his cause of action against CHI.[53] Our review of the record convinces us the court did not err in holding that a reasonable inquiry by Christianson would have revealed the factual basis for a potential malpractice claim against CHI, and would have revealed Cascade National's unwillingness to cover the loss.

---

[51] *Pedersen v. Zielski*, 822 P.2d 903, 908 (Alaska 1991) (citing *Palmer v. Borg-Warner*, 818 P.2d 632, 638 (Alaska 1990)).

[52] 736 P.2d at 767 & n.6. See the text accompanying footnotes 48, 49, above.

[53] The record does not reveal when Christianson received the letter, but he does not contend any delay in its transmission or receipt affects application of the discovery rule or the result in this case. There is no dispute that he received the letter and began to incur defense costs in 2004, more than three years before he sued CHI.

The dissent argues that the superior court "erred by failing to make findings about whether Christianson's inquiry was reasonable," but Christianson did not preserve that argument. His opening appellate brief does not argue that the superior court failed to make findings about reasonableness; it instead argues that the court failed to consider his inquiry, specifically, his tender to Cascade National in 2007. Only one sentence of his reply brief claims that the court made no finding about reasonableness. He asserts there that the superior court never found that his inquiry was not reasonable. Failing to make a finding is not the same as failing to consider a fact.[54] Raising the latter issue does not preserve the former.

Even if the issue had been preserved, Christianson discusses no evidence that would have permitted a finding that he made an objectively reasonable inquiry that delayed the running of the limitations period. The statute of limitations is tolled if "a person makes a reasonable inquiry which does not reveal the elements of the cause of action within the statutory period at a point where there remains a reasonable time within which to file suit."[55]

The superior court made pertinent findings. It found that "[a] reasonable inquiry would involve an investigation of both his insurer's position and the actual coverage that his broker obtained for him." It found that "an inquiry [in October 2004] would have revealed . . . that CHI failed to advise Mr. Christianson of the need to obtain coverage for the continued operation of GALL's hydroseeder. The inquiry would also

---

[54]     *Cf. Lowery v. McMurdie*, 944 P.2d 50 (Alaska 1997) (remanding for failure to make adequate findings).

[55]     *John's Heating Serv. v. Lamb*, 46 P.3d 1024, 1031-32 (Alaska 2002) (quoting *Cameron v. State*, 822 P.2d 1362, 1367 (Alaska 1991)). Christianson does not contend that a reasonable inquiry would have been unsuccessful or futile, or that he could not have learned in 2004 what he learned in 2006. *Cf. Egner v. Talbot's, Inc.*, 214 P.3d 272, 281 (Alaska 2009).

have revealed that Cascade National was unwilling to cover the loss." Given what Christianson actually did and did not do after Jones sued and after Great Divide sent the September 24, 2004 letter, we read these findings as effectively finding that Christianson did not make a reasonable inquiry. And the superior court's discussion of what facts a reasonable inquiry would have revealed, given Christianson's undisputed failure to learn those facts, would preclude a finding that he had made a reasonable inquiry.[56]

There is no evidence Christianson contacted CHI to determine whether there was a gap in his liability coverage, and if there was, whether CHI was responsible for that gap. His only contacts with CHI after Jones sued him appear to have resulted in reassurances that Jones's exclusive remedy was workers' compensation. No reassurances on that topic could have justified a reasonable belief that CHI had obtained liability insurance covering Christianson for Jones's lawsuit and covering his defense expenses in that action. Any reasonable inquiry would have promptly revealed that workers' compensation did not bar Jones's tort lawsuit. Jones's exclusive remedy against Christianson in Christianson's capacity as owner or operator of Titan would indeed have been workers' compensation. But Jones was suing Christianson in his capacity as owner and operator of GALL, which owned and loaned the allegedly defective hydroseeder. The exclusive liability statute, AS 23.30.055, did not bar Jones's tort claims, because he was not suing Christianson in his capacity as Jones's employer. Christianson therefore remained under a continuing duty to inquire.

Christianson also asserts that the superior court "ignore[d] the significance" of the admissions made by Dennis at his deposition in 2006. But the court took that

---

[56] *See Gefre v. Davis Wright Tremaine, LLP*, 306 P.3d 1264, 1275 (Alaska 2013) ("If an inquiry has not been made, we ask in the abstract whether a reasonable inquiry would have produced knowledge of the cause of action." (citing *Pedersen v. Zielski*, 822 P.2d 903, 908 (Alaska 1991))).

deposition into account when it found the same information would have been revealed if Christianson had inquired in 2004. The court also implicitly found Christianson's inquiry was unreasonable because he had not learned that information sooner. Christianson also seems to argue that only in 2006 did Dennis's admissions reveal any failure by CHI; he asserts that until then, Dennis represented that Christianson and his companies were "fully covered for Jones'[s] injury." But Christianson never testified that Dennis told him any insurer, including Great Divide, owed Christianson a defense in the Jones lawsuit or would indemnify his potential liability to Jones. Christianson's description of Dennis's reassurances cannot be read as reassurances that CHI had obtained any liability insurance that covered Christianson in Jones's tort suit.

Nor was there any evidence Christianson made other efforts to determine whether he in fact had liability coverage for the Jones lawsuit. It should have been readily apparent to him that Great Divide was probably correct in thinking the employee exclusion applied. Christianson has offered no analysis of the September 24 letter or Great Divide's policy that would demonstrate any plausible reason to think then or now that Great Divide's insurance policy actually covered him in Jones's lawsuit. Christianson's allegations of good faith in contesting Great Divide's declaratory judgment action do not demonstrate that he made a reasonable inquiry or that the superior court clearly erred.

Christianson contends that the superior court ignored "the circumstances and legal significance" of his tender to Cascade National, Titan's auto insurer. That contention is answered by the superior court's finding that a reasonable inquiry in the fall of 2004 would have revealed that Cascade National was unwilling to cover the loss. Christianson has not shown that finding was clearly erroneous. Moreover, he refers us to no evidence he thought in 2004 that Cascade National's policy covered Jones's claims. Indeed, he refers us to no evidence he thought in 2004 he had any liability coverage other

than Great Divide's. Even after Great Divide declined in 2004 to defend him, causing him to begin incurring defense costs, he did not tender defense of the Jones lawsuit to Cascade National until 2007. He likewise refers us to no evidence that it would have been reasonable for him to think that CHI, by obtaining the Cascade National auto coverage for Titan, had discharged its alleged professional duty to obtain insurance protecting him from claims based on use of vehicles owned by GALL.

Christianson's opening appellate brief implies that an insurance form produced from the CHI files at the 2006 deposition of Dennis caused him to tender the defense to Cascade National. But because Christianson claims he first learned of that form in 2006, it could not have caused him to think in 2004 that CHI had obtained coverage for suits like Jones's; the form he first saw in 2006 likewise could not have justified his failure to make a reasonable inquiry after he received Great Divide's September 24, 2004 letter. On the other hand, the availability of the form in CHI's file supports the superior court's finding that the same information would have been available upon request made to CHI had Christianson made any reasonable inquiry after receiving Great Divide's letter. Given the conceded importance of liability insurance to Christianson after Jones sued, and given that Christianson was personally paying for his own defense, it was unreasonable for Christianson to fail to ask CHI for the Cascade National policy until Dennis was deposed in November 2006.

The superior court did not clearly err or commit legal error in resolving the reasonable-inquiry issue.

C.    **The Superior Court's Decision Raises No Public Policy Concerns.**

Christianson argues that the superior court's decision has practical and public policy implications, such as encouraging excessive or premature malpractice litigation.

The discovery rule can sometimes give rise to tension between a claimant's need to make timely claims and a possible social desire to discourage avoidable malpractice lawsuits. And we assume, as Christianson implies, that a party defending himself in a personal injury lawsuit or in an insurer's action seeking a no-coverage declaration would prefer not to be distracted from his defense efforts by having to inquire about his insurance broker's possible malpractice or having to sue the broker for malpractice. But what the discovery rule effectively does — requiring a party to take steps to protect its interests — is simply a reflection of what the statutes of limitations do.

Potentially conflicting social interests do not broadly vitiate the discovery rule, or indeed, the applicable statute of limitations. Nor do they prevent the discovery rule's application here, where such tensions might have been easily mitigated. Reasonable inquiry would have given Christianson that information in ample time to sue CHI before the statutory period expired or to obtain CHI's agreement to extend the limitations period until after any coverage and liability issues were resolved. And in any event, Christianson had a full three years after he began incurring defense costs in which to sue or reach an extension agreement with CHI.

Public policy was not somehow violated by applying the discovery rule to Christianson.

D.    **Equitable Tolling Does Not Apply Here.**

Finally, Christianson argues briefly that the limitations period equitably tolled. As CHI points out, he did not raise this issue in the superior court. We also conclude that he did not brief it adequately in this court and has consequently waived the argument.[57]

---

[57]    *State v. Pub. Safety Emps. Ass'n*, 257 P.3d 151, 165 (Alaska 2011) ("[A]rguments are waived on appeal if they are inadequately briefed." (citing *Barnett v.*
(continued...)

While rightly conceding that Christianson did not raise equitable tolling in the superior court and did not adequately brief the issue on appeal, the dissent would nonetheless hold that the limitations period was equitably tolled while the insurance companies' declaratory judgment actions and Jones's personal injury lawsuit were pending. But because the superior court in conformity with our precedent held an evidentiary hearing to resolve the factual disputes relevant to the lawsuit's timeliness,[58] Christianson was obligated to raise all potentially relevant factual disputes so the superior court could make the necessary findings of fact.[59] Equitable tolling inherently

---

[57](...continued)
*Barnett*, 238 P.3d 594, 598 (Alaska 2010))). Equitable tolling's inapplicability here might explain why Christianson did not raise the issue at trial or preserve it on appeal.

[58]    *See Pedersen v. Zielski*, 882 P.2d 903, 907 n.4 (Alaska 1991) (recommending that trial court hold evidentiary hearing on statutes of limitations disputes to resolve fact questions).

[59]    The dissent cites *Larson v. State, Department of Corrections*, Mem. Op. & J. No. 1257, 2006 WL 1868494 (Alaska, July 5, 2006), in which we applied equitable tolling and remanded a case to the superior court, even though the pro se appellant had not relied on equitable tolling in the superior court. But the State there agreed a remand was appropriate; it stated "it had 'no problem with' allowing [the] appeal of [the later case] to proceed." *Id.* at *6 n.16. CHI made no similar concession here, and Christianson, who was not pro se, mentioned equitable tolling only briefly at oral argument before us. Also, Larson's two lawsuits involved the same issue (prisoner classification) and the same parties. *Id.* at *5-*6. But here Christianson brought a new cause of action — for professional malpractice — against a different party — CHI. The opposing parties in the other lawsuits were his insurers and his former employee.

raises potential factual disputes.[60]  There is no basis for remanding to try an unpreserved and fact-dependant issue that was not litigated at the evidentiary hearing.

Apart from these procedural barriers, equitable tolling does not apply here, because it requires, among other things, that the party have pursued a past claim in a "judicial or quasi-judicial governmental forum."[61]  Christianson did not previously pursue a claim against CHI in any forum.  Defending in the insurers' declaratory judgment actions and Jones's personal injury lawsuit was no substitute for a claim against CHI.  CHI was not a party, and its potential liability to Christianson was not relevant, in those lawsuits.

The dissent would apply *Brannon v. Continental Casualty Co.*[62] to hold that the statute of limitations was equitably tolled until the declaratory judgment and personal injury lawsuits were resolved.  There we considered and explicitly rejected cases from other states that held that the limitations period in a duty-to-defend case does not begin to run until the underlying litigation ends.[63]

*Brannon* concerned the timeliness of an insured's claims against his liability insurer.  We adopted California's equitable tolling rule in duty-to-defend cases and held that although an insured may immediately file a contract action against the insurer for

---

[60]    *See Dayhoff v. Temsco Helicopters, Inc.*, 772 P.2d 1085, 1088 (Alaska 1989) (remanding "for resolution of the factual questions" of notice and prejudice); *Gudenau & Co. v. Sweeney Ins., Inc.*, 736 P.2d 763, 768 (Alaska 1987) (noting potential issues about whether any prior remedies gave the defendant notice of the claim).

[61]    *Gudenau & Co.*, 736 P.2d at 768.

[62]    137 P.3d 280 (Alaska 2006).  Christianson's briefs do not cite *Brannon*.

[63]    *Id.* at 286.  Florida follows this rule.  *Cont'l Cas. Co. v. Fla. Power & Light Co.*, 222 So. 2d 58, 59 (Fla. App. 1969).

breach of the duty to defend, the insured is not required to do so.[64] California has refused to extend its equitable tolling doctrine from duty-to-defend cases against insurers to malpractice actions against insurance brokers.[65] The California Court of Appeal has explained that "the relationships among insureds, insurers, and brokers give rise to different duties that, in turn, are subject to different statutes of limitations."[66] We agree. An insurance broker will generally not have the same opportunity, motivation, or contractual duty that an insurer has to investigate a coverage dispute.

The dissent argues that a party should not be required to defend two lawsuits simultaneously. In Part IV.C we considered and rejected Christianson's equivalent policy argument. And *Brannon* would not prevent simultaneous lawsuits even if no broker claim were being made: An insurance company (or an insured) may always sue seeking a declaration on coverage issues before the underlying lawsuit ends. We there recognized that any party could immediately ask a court to construe the insurance contract rather than wait for any underlying litigation to end, stating, "[t]he California approach . . . allows (but does not force) an insured to file suit for breach immediately after the insurance company denies the defense."[67] But a malpractice action against a broker is different: A broker cannot protect itself from stale claims by asking the court to declare that it has not committed malpractice.

The rule proposed by the dissent would permit a broker like CHI to be sued for malpractice many years after it placed the insurance and the insured began suffering

---

[64] *Brannon*, 137 P.3d at 285-86.

[65] *Hydro-Mill Co. v. Hayward, Tilton & Rolapp Ins. Assocs., Inc.*, 10 Cal. Rptr. 3d 582, 597-98 (Cal. App. 2004).

[66] *Id.* at 598.

[67] *Brannon*, 137 P.3d at 286 (citation omitted).

actual damages from the broker's alleged malpractice.  This is not the case to adopt such a sweeping change.[68]

The dissent, in discussing equitable tolling, relies on *Peat, Marwick, Mitchell & Co. v. Lane*.[69]  The Florida Supreme Court there held that an accounting malpractice cause of action did not accrue until a tax court entered a final judgment.[70] *Peat, Marwick* is founded on Florida's rule for accrual in attorney malpractice cases; in Florida "a cause of action for legal malpractice does not accrue until the underlying legal proceeding has been completed on appellate review."[71]  Alaska does not follow that approach to accrual:  We explicitly rejected "the 'exhaustion of appeals' rule" in *Beesley v. Van Doren*,[72] and Christianson has not asked us to reverse settled law about accrual of malpractice actions.

Equitable tolling would not excuse the untimeliness of Christianson's lawsuit or justify remand.

---

[68]     This court reversed and remanded Jones's personal injury action against Christianson in 2012.  *Jones v. Bowie Indus., Inc.*, 282 P.3d 316 (Alaska 2012).  The dissent's analysis would toll the running of the limitations period on the claim against CHI until Jones's claims are finally resolved, at some future date following remand.  The limitations period would therefore be tolled for at least nine years after Christianson asked Dennis to get him insurance, and thus long after the communications and events relevant to obtaining insurance took place.  And only then would the three-year period arguably begin to run.

[69]     565 So. 2d 1323 (Fla. 1990).

[70]     *Id.* at 1327.

[71]     *Id.* at 1325 (citations omitted).

[72]     873 P.2d 1280, 1282 (Alaska 1994) (citing *Wettanen v. Cowper*, 749 P.2d 362, 365 (Alaska 1988)).  *Cf. Thomas v. Cleary*, 768 P.2d 1090, 1093 (Alaska 1989) (holding that clients had suffered no harm because IRS had not sent deficiency notice).

## V. CONCLUSION

We AFFIRM the judgment of the superior court.

FABE, Justice, disssenting.

## I.  INTRODUCTION

Because I disagree with the court's application of the discovery rule in this case, I respectfully dissent.  "Under the discovery rule, a cause of action accrues 'when a person discovers, or reasonably should have discovered, the existence of all elements essential to the cause of action.' "[1]  In my view, this rule compels the conclusion that the statute of limitations period on Christianson's malpractice claim did not begin to run until Great Divide formally disclaimed its duty to defend Christianson in March 2006.  The court reasons that the statute of limitations period started to run when Christianson received Great Divide's September 24, 2004 letter.[2]  The court cites to authority from other jurisdictions to contend that Christianson's defense costs in 2004 completed the elements of his malpractice tort claim against his insurance broker and therefore triggered the statute of limitations period.[3]  But in each of the cited cases, the defense costs were incurred after a definitive denial of insurance coverage, which did not occur in this case until 2006.  The essential elements of Christianson's cause of action could not be discovered in 2004 because Great Divide had not yet taken a definitive position on coverage or decided whether it would reimburse Christianson for the cost of his defense.  Furthermore, the statute of limitations period on Christianson's malpractice

---

[1]  *Roach v. Caudle*, 954 P.2d 1039, 1041 (Alaska 1998) (quoting *Cameron v. State*, 822 P.2d 1362, 1366 (Alaska 1991)).

[2]  Slip Op. at 10-19.

[3]  Slip Op. at 18 n.35.

claim should have been equitably tolled under the rule declared in *Brannon v. Continental Casualty Co.*[4]

## II.    DISCUSSION

### A.    The Statute Of Limitations Could Not Have Started To Run On September 24, 2004 Because Christianson Had Not Yet Suffered An Injury.

#### 1.    Christianson's claim was not yet ripe.

The court concludes that the superior court did not err in finding that "the statute of limitations began running [on September 24, 2004,] when Christianson learned information that should have caused him to make an inquiry that would have discovered the essential elements of his cause of action against CHI."[5]  But in my view the statute of limitations could not possibly have started to run then because the essential elements of Christianson's claim had not yet accrued.  Because his insurers had not yet declined to defend him, Christianson had not yet suffered an injury attributable to CHI and thus could not have brought a malpractice claim against CHI at that time.

In *Thomas v. Cleary*, we held that suspected future harm is not enough to ripen a claim of professional malpractice.[6]  In that case, the Clearys sued their accounting firm, alleging that it had miscalculated and failed to file taxes owed by their business.[7] After a jury awarded damages to the Clearys, the accounting firm appealed, arguing that the Clearys' claim was not yet ripe because the corporation's tax liability for the year in

---

[4]    137 P.3d 280 (Alaska 2006).

[5]    Slip Op. at 28.

[6]    768 P.2d 1090, 1092-93 (Alaska 1989).

[7]    *Id.* at 1091.

question had not yet been assessed by the IRS.[8]  We held that there must be a definite injury before a claim for malpractice becomes actionable:

> The mere breach of a professional duty, causing only nominal damages, speculative harm, or the threat of future harm — not yet realized — does not suffice to create a cause of action for negligence. Hence, until the client suffers appreciable harm as a consequence of [the professional's] negligence, the client cannot establish a cause of action for malpractice.[9]

And we also held that, even though the Clearys knew about the accountant's misconduct and knew that they would be liable if the IRS ever did assess a deficiency, they had not yet suffered the required injury because the IRS had not yet assessed a tax deficiency against them:  "Even if [the client] discovers [the professional's] negligent acts before he suffers damages, the cause of action for malpractice is not complete until actual damages are suffered."[10]  We concluded that the Clearys' claim was not yet ripe because harm could still be averted:  "If a deficiency had never been assessed, the plaintiff would not have been harmed and therefore would have had no cause of action."[11]

The present case is similar.  Christianson's malpractice claim against CHI was not yet ripe when Christianson received Great Divide's September 24, 2004 letter because the letter left open the possibility that Great Divide would defend Christianson or reimburse him for a defense.  The letter said only that Great Divide "*may* refuse to

---

[8]      *Id.* at 1092.

[9]      *Id.* (quoting *Budd v Nixen*, 491 P.2d 433, 436 (Cal. 1971), *superseded by statute*, 1977 Cal. Stat. Ch. 863, § 1, *as recognized in Laird v. Blacker*, 279 Cal. Rptr. 700 (Cal. App. 1991)).

[10]      *Id.* at 1094 (citing *Greater Area Inc. v. Bookman*, 657 P.2d 828, 829 n.3 (Alaska 1982)).

[11]      *Id.* at 1093 (quoting *Atkins v. Crosland*, 417 S.W.2d 150, 153 (Tex. 1967)).

indemnify [Christianson] in this matter" (emphasis added) and that Great Divide would provide Christianson with its position regarding coverage sometime in the future. If, after sending the letter, Great Divide (or one of Christianson's other insurers) had provided coverage instead of denying it, Christianson would not have been harmed and would not have had a cause of action. Prior to an actual denial of coverage from Great Divide, any injury from CHI's alleged malpractice was purely speculative. Therefore, Christianson's claim for malpractice could not have ripened before a formal denial of coverage.

The court places great emphasis on the fact that Christianson incurred defense costs after Great Divide's September 24, 2004 letter informed him that Great Divide "may refuse to defend or indemnify [him] for this matter." The court cites to cases from other jurisdictions to support its contention that the fact of incurring attorney's fees completes the elements of a malpractice tort claim against an insurance broker and triggers the statute of limitations.[12] In each of those cases, however, the defense costs were incurred *after a definitive denial of coverage*.[13] Similarly, the court

---

[12]     Slip Op. at 18 n.35.

[13]     *See Am. Home Assurance Co. v. Osbourn*, 422 A.2d 8, 16 (Md. App. 1980) (holding that the statute of limitations for the malpractice claim against the insurance broker began to run on the date when the insurance company sent a letter "stating there was no coverage and declining to provide a defense"); *Spurlin v. Paul Brown Agency, Inc.*, 454 P.2d 963, 964 (N.M. 1969) (holding that the malpractice cause of action accrued when the insurance broker's client was sued, which was nearly two years after being definitely informed by the insurance broker that there was no coverage on his vehicle); *see also Wallace v. Helbig*, 963 S.W.2d 360, 361-62 (Mo. App. 1998) (holding that the malpractice statute of limitations began to run when the trial court "entered a declaratory judgment . . . which determined that the insurance policy provided by [the insurance broker] did not provide coverage . . . . In the event the court had declared there was coverage, [the insured] would not have had a cause of action against [the insurance

(continued...)

-42-                                                                                                                6868

relies on *Gudenau & Co., Inc. v. Sweeney Insurance, Inc.*, where we held that the discovery rule was triggered and the statute of limitations began to run when the insurance claim was formally rejected by the insurer.[14]   But Great Divide's September 24, 2004 letter indicated that it was not stating a definitive position on coverage, which would be provided only after its investigation.

As we held in *Jarvill v. Porky's Equipment, Inc.*, the statute of limitations on a claim cannot begin to run until the claim is ripe.[15]  In that case, Jarvill bought a fishing boat from Porky's Equipment.[16] When the boat was delivered, Jarvill's inspector expressed concern that the aluminum sheeting used for the hull was too thin to be safe.[17] Two-and-a-half years after delivery, the hull cracked and the boat sank.[18]  Jarvill sued Porky's Equipment for negligence and for selling a defective product.[19]  Porky's Equipment claimed that the two-year statute of limitations barred Jarvill's suit because Jarvill had notice of the defect at the time of delivery and, under the discovery rule,

---

[13](...continued)
broker] under any recognized legal theory.").

[14]      736 P.2d 763, 767 (Alaska 1987) (in applying the discovery rule, we also noted that "[i]nsurance policy exclusions do not necessarily have independent meaning for a layperson.  The insured is entitled to rely on his broker's professional skill and representations when interpreting the scope of his insurance coverage.").

[15]      189 P.3d 335, 341 (Alaska 2008).

[16]      *Id.* at 336.

[17]      *Id.*

[18]      *Id.* at 337.

[19]      *Id.*

reasonable inquiry would have led Jarvill to discover all the essential elements of his claim.[20]

On appeal we rejected the argument of Porky's Equipment.[21] Despite the fact that Jarvill was put on notice that the boat might be defective when it was delivered, we held that "any tortious injury to Jarvill remained a matter of speculation" until the boat actually sank.[22] We held that "the discovery rule only extends the statute of limitations; it does not shorten it."[23] And we recognized that starting the statute of limitations when Jarvill had notice of only potential future harm would require us to conclude, paradoxically, that Jarvill's claim had accrued before it was ripe, and would "lead us to the anomalous and grossly unfair result of the statute being held to have run and the bar becoming completed even before the hapless plaintiff suffered injury or damage."[24]

In my view, the present case is indistinguishable from *Porky's Equipment*. No matter what Christianson should have suspected when Great Divide first informed him it was considering denying his claim, he had no right of action against CHI until he had actually been denied insurance coverage. Like the warning that the boat's hull was too thin, Great Divide's letter signaled potential future injury. But it was only when the boat actually sank that harm was done and a claim accrued; if the boat had stayed afloat, there would have been no claim. And if, after sending its initial letter, Great Divide had

---

[20]     *Id.* at 338-39.

[21]     *Id.* at 339-40.

[22]     *Id.*

[23]     *Id.* at 339.

[24]     *Id.* at 340-41 (internal citation omitted).

provided coverage and reimbursed Christianson for his defense, then Christianson would have had no right of action against CHI for malpractice. Therefore, Christianson's claim could not have been brought when he received Great Divide's letter, and the statute of limitations cannot have started to run then.

The court claims that it is irrelevant to the discovery rule issues whether or not Christianson could have filed a malpractice lawsuit against CHI after receipt of Great Divide's September 24, 2004 letter.[25] But this contention contradicts the court's own formulation of the discovery rule as "simply determin[ing] when the cause of action accrues for purposes of triggering the applicable limitations period."[26] *Black's Law Dictionary* defines "accrue," as applied to a cause of action, as follows: "[a] cause of action 'accrues' when a suit may be maintained thereon."[27] Therefore, it cannot be irrelevant to consider whether Christianson could have maintained a malpractice lawsuit in the fall of 2004, when the court insists that the statute of limitations was triggered. The court's subsequent discussion of the difference between the knowledge sufficient to require inquiry and the knowledge sufficient to support a lawsuit[28] obscures the essential requirement that Christianson's cause of action must have accrued before the discovery rule became applicable.

---

[25] Slip Op. at 19.

[26] Slip Op. at 12.

[27] *See United States v. Meyer*, 808 F.2d 912, 914 (1st Cir. 1987) (alteration in original) (quoting BLACK'S LAW DICTIONARY 19 (5th ed. 1979)); *see also Conrad v. Hazen*, 665 A.2d 372, 375 (N.H. 1995) (holding that an action "does not accrue until 'a suit may be maintained thereon' " (quoting BLACK'S LAW DICTIONARY 21 (6th ed. 1990))).

[28] Slip Op. at 19.

**2.    The superior court clearly erred by finding that Great Divide's September 24, 2004 letter was a definitive denial of coverage.**

The superior court found that a reasonable person, looking at Great Divide's September 24, 2004 letter, would have felt absolutely certain that Great Divide would eventually deny coverage, and that therefore the letter was as good as a formal denial.    The superior court concluded that Christianson suffered injury in September 2004.  Today the court concludes that this finding was not clearly erroneous.[29]  But we have held that the statute of limitations is a disfavored defense and that "neither the law nor the facts should be strained in aid of it."[30]  Only by straining the facts could the superior court conclude that the September 24, 2004 letter was an actual denial of coverage.  I therefore conclude that the superior court's findings on this point were clearly erroneous.

The superior court found that the letter was an actual denial of coverage for two reasons.  First, the superior court found that the letter essentially informed Christianson that he "was on his own" and that Christianson began incurring damages shortly thereafter.  Second, the superior court found that the letter's discussion of exclusions in Christianson's policy informed him that he was not covered.  In my view, the superior court's analysis on both of these points was incorrect.

---

[29]    Slip Op. at 15.

[30]    *Tipton v. ARCO Alaska, Inc.*, 922 P.2d 910, 912-13 (Alaska 1996) (quoting *Safeco Ins. Co. v. Honeywell*, 639 P.2d 996, 1001 (Alaska 1981)) (internal quotation marks omitted).

**a.** **It was error to interpret the plain language of the September 24, 2004 letter as "effectively disclaiming Great Divide's duty to defend Mr. Christianson."**

I conclude that it was plain error to interpret Great Divide's September 24, 2004 letter as a definitive denial of coverage. The letter stated clearly and repeatedly that Great Divide was not yet denying coverage or a defense. Specifically, the letter stated: "We have assigned [an adjuster] to investigate the circumstances of this incident . . . . Once the investigation has been conducted, we will review the information and documentation obtained . . . . We will *then* provide you with our position regarding coverage." (Emphasis added.) It also indicated that "Great Divide *may* refuse to defend or indemnify you for this matter." (Emphasis added.) Great Divide could have decided to defend Christianson without contradicting anything it wrote in the letter.

The superior court's attempt to reconcile this clear language with its conclusion that Great Divide's letter actually denied coverage led to factual findings that contain internal contradictions. While the superior court found that Great Divide was "effectively" denying Christianson a defense, it also found that the letter was merely a "preliminary determination" that put Christianson "on notice of the precise reason Great Divide *eventually* declined to indemnify his loss or reimburse legal costs." (Emphasis added.) But the letter must have either been an actual denial or a preliminary determination. In my view it was clear error to find that it was both.

The superior court also placed great weight on Great Divide's statement that it would be "necessary for [Christianson] to protect [his] own interest in regard to the Complaint." The superior court found that this phrase was "critical" and interpreted it to mean that "Great Divide was effectively disclaiming its duty to defend Mr. Christianson." But this phrase was sandwiched between important qualifying language, which the superior court failed to discuss. Immediately before, Great Divide

indicated that such action would only be necessary "[i]n the interim" until it provided Christianson with its "position regarding coverage." And later in the same paragraph, Great Divide promised to reimburse Christianson "[s]hould we determine that we do in fact have a duty to provide a defense in this matter." I would hold that it was clear error to interpret these plainly noncommital statements as a definitive denial of coverage.

The superior court's analysis is not saved by its insistence that the letter forced Christianson to provide his own defense. Because Great Divide explicitly left open the possibility that it would reimburse Christianson for this expense, Christianson had not yet suffered any injury attributable to CHI. The strongest claim that the facts will bear is the court's observation that "[Christianson] was therefore aware he was presently suffering an out-of-pocket loss [for which] Great Divide *might* not reimburse him . . . ."[31]

> **b.     It was clear error to find that Great Divide's discussion of policy exclusions implied a denial of the duty to defend.**

It was also clear error for the superior court to find that Great Divide's discussion in the September 24, 2004 letter of exclusions in Christianson's policy was equivalent to an actual disclaimer of the duty to defend and indemnify. This is essentially a finding that, through careful analysis of the policy exclusions, Christianson could have predicted that Great Divide would eventually deny coverage. But we have rejected the idea that the insured should be expected to go beyond the express representations of his insurer to divine the scope of his coverage. In *Gudenau & Co., Inc. v. Sweeney Insurance, Inc.*, we concluded that "[i]nsurance policy exclusions do not necessarily have independent meaning for a layperson" and held that the statute of limitations began to run not when the insured read his policy, which contained an

---

[31]     Slip Op. at 17-18 (emphasis added).

exclusion of coverage, but when the insurer actually rejected the claim.[32] The situation is similar here. Great Divide's letter may have drawn Christianson's attention to the exclusions it would eventually invoke to deny his claim, but it was clear error to find that merely highlighting these exclusions operated as a definite denial of coverage.

And engaging in a murky and fact-sensitive inquiry into whether a hypothetical reasonable person would, despite Great Divide's express language to the contrary, treat the September 24, 2004 letter as a definitive denial of a defense is inconsistent with the bright-line nature of a statute of limitations. "Statutes of limitations should be capable of application without engendering extensive litigation before the case on the merits is litigated. Thus, in theory, the statutes of limitations should begin to run on the occurrence of a definitive event."[33] In my view, that definitive event in this case was Great Divide's actual, express denial of coverage.

I conclude that Christianson's malpractice claim was not yet ripe and that the statute of limitations on his claim did not begin to run until Great Divide formally denied coverage in March 2006. I would therefore hold that Christianson's claim, filed in 2008, was not barred by the three-year statute of limitations.[34]

---

[32]     736 P.2d 763, 767-68 (Alaska 1987).

[33]     *Pedersen v. Zielski*, 822 P.2d 903, 907 (Alaska 1991).

[34]     Even assuming that Christianson suffered immediate injury and that all the elements of a malpractice suit were in place, waiting to be discovered, as of September 24, 2004, the superior court also erred by failing to make findings about whether Christianson's inquiry was reasonable.

Whether an inquiry was reasonable is a "genuine issue[] of material fact which must be resolved at an evidentiary hearing." *Id.* at 908. We have held that, where the plaintiff has made an inquiry, the court should ask not whether an ideal inquiry would have produced knowledge, but whether the inquiry that was made was reasonable. *Id.*
(continued...)

**B.**      **The Statute Of Limitations Should Have Been Equitably Tolled Until The Resolution Of The Underlying Litigation.**

Even if the statute of limitations period would otherwise have started upon receipt of the September 24, 2004 letter, the equities of the case demand that the statute of limitations be tolled until the conclusion of Christianson's underlying litigation with Jones and Christianson's insurers. The equitable tolling doctrine "relieve[s] a plaintiff from the bar of the statute of limitations when he has more than one legal remedy

---

[34](...continued)

The superior court failed to examine whether Christianson's inquiry was reasonable under this standard. Christianson investigated the existence of a claim for malpractice against CHI by tendering the defense to his insurers and litigating the scope of their obligations in declaratory judgment actions. Only three sentences in the superior court's opinion conceivably relate to the issue of whether this inquiry was reasonable, and they are all merely observations about the characteristics of an ideal inquiry:

> A reasonable inquiry would involve an investigation of both his insurer's position and the actual coverage that his broker obtained for him. . . . [A]n inquiry [when Christianson received Great Divide's September 24, 2004 letter] would have revealed what Mike Dennis allegedly conceded at his deposition: that CHI failed to advise Mr. Christianson of the need to obtain coverage for the continued operation of GALL's hydroseeder. The inquiry would also have revealed that Cascade National was unwilling to cover the loss.

Today this court reads these "as effectively finding that Christianson did not make a reasonable inquiry." Slip Op. at 30. But these sentences contain no such finding; they do not examine Christianson's conduct at all. Instead of examining whether "a plaintiff's particular inquiry. . . was reasonable," the superior court examined whether "a reasonable inquiry would have produced knowledge," an approach we identified as clear error in *Pedersen*. 822 P.2d at 908.

available to him."[35]  In such circumstances, the statute is equitably tolled if "(1) pursuit of the initial remedy gives defendant notice of plaintiff's claim, (2) defendant's ability to gather evidence is not prejudiced by the delay, and (3) plaintiff acted reasonably and in good faith."[36]  If the doctrine applies, the statute of limitations is tolled during the pendency of the initial litigation and the plaintiff is given the full statutory period to file once tolling ceases.[37]  In this case, the statute of limitations should have been tolled pending the resolution of the underlying personal injury lawsuit against Christianson and Christianson's declaratory judgment actions against his insurers.

It should be noted that Christianson did not argue below that the statute of limitations on his malpractice claim should be equitably tolled while he was pursuing other legal remedies.  Nor was the issue adequately briefed before us.  But in *Larson v. State, Department of Corrections*, we determined that the statute of limitations on the claim in that case was equitably tolled despite the fact that the issue had not been raised

---

[35]  *Fred Meyer of Alaska, Inc. v. Bailey*, 100 P.3d 881, 886 (Alaska 2004) (quoting *Dayhoff v. Temsco Helicopters, Inc.*, 772 P.2d 1085, 1087 (Alaska 1989)).

[36]  *Id.*

[37]  *See id.* (citing *Gudenau & Co., Inc.*, 736 P.2d at 768).  Although our previous cases have uniformly held that once the circumstances that justify equitable tolling abate, the plaintiff has the full statutory period to file his claim, we left open the question whether this will be true in every case in *Solomon v. Interior Regional Housing Authority*, 140 P.3d 882, 885-86 (Alaska 2006).  But even if equitable tolling in this case merely paused the statute of limitations period instead of resetting it, Christianson filed his claim against CHI in time.  Christianson began litigating the declaratory judgment action against Great Divide less than two years after Great Divide sent the letter definitively disclaiming its duty to defend in March 2006.  And Christianson filed his lawsuit against CHI only nine months after Cascade finally prevailed on its declaratory judgment action.  Therefore, excluding the time spent litigating the declaratory judgment actions  against Great Divide and Cascade, Christianson brought his claim against CHI within three years of receiving Great Divide's letter.

below.[38]  Failure to consider whether the statute of limitations should have been equitably tolled in this case would leave Christianson without a remedy and contradict our judgment that the statute of limitations is a disfavored defense and that we "will strain neither the law nor the facts in its aid."[39]

        **1.**     **Christianson's litigation against Jones and Christianson's insurers demands a tolling of the statute of limitations on Christianson's malpractice claim.**

After Christianson received Great Divide's September 24, 2004 letter, he litigated three other actions before filing his claim for malpractice against CHI.  First, he defended himself in the personal injury suit filed by Jones, the Titan employee who was injured using the hydroseeder.  Second, Christianson litigated a declaratory judgment action filed by Great Divide for non-liability.  Finally, Christianson litigated a similar action filed by Cascade National.  In my view, all three of these actions demand that the statute of limitations on Christianson's malpractice claim be tolled.

In *Brannon v. Continental Casualty Co.*, we examined a similar situation.[40] In that case, the insurer refused to defend the insured party against claims filed by the Brannons.[41]  The insured party filed for bankruptcy, and the Brannons obtained a

---

[38]     Mem. Op. & J. No. 1257, 2006 WL 1868494, at *5-6 (Alaska, July 5, 2006).

[39]     *Solomon*, 140 P.3d at 883 (holding that, where there is no dispute over relevant facts, the date on which the statute of limitations begins to run "becomes a question of law to which we will apply our independent judgment").

[40]     137 P.3d 280 (Alaska 2006).

[41]     *Id.* at 282.

judgment in their favor as part of the bankruptcy proceedings.[42]  The insured also transferred any claims he had against his insurer to the Brannons, and the Brannons subsequently sued the insurer for breaching its contractual duties under the insurance policy to defend and indemnify the insured.[43]  The superior court dismissed the suit on summary judgment, holding that the statute of limitations had started to run when the insurer denied the defense, more than three years before the Brannons filed suit.[44]

On review we adopted the rule that "although the statutory period for breach of the duty to defend commences upon the refusal to defend, it is equitably tolled until the underlying action is terminated by final judgment."[45]  Our decision was based on our judgment that requiring the insured to defend himself in the underlying suit while also litigating against his insurance company would be unfair:

> [T]olling the statute of limitations during the pendency of the underlying litigation avoids requiring the insured to participate in two lawsuits at once. After the insurance company has denied the insured a defense, it would be potentially unfair to require the insured to file a lawsuit against the insurance company while simultaneously defending himself in the underlying lawsuit.[46]

---

[42]     *Id.* at 283.

[43]     *Id.*

[44]     *Id.*  The applicable statute of limitations requires that contract actions be commenced within three years.  *See* AS 09.10.053.

[45]     *Brannon*, 137 P.3d at 285 (quoting *Lambert v. Commonwealth Land Title Ins. Co.*, 811 P.2d 737, 739 (Cal. 1991)) (internal quotation marks omitted).

[46]     *Id.* at 286.

In addition to preventing injustice to the insured, we also recognized that tolling the statute of limitations would "promote judicial economy, lead to certainty of damages, and assist courts by establishing a 'bright-line rule' " about the statute of limitations period.[47]

The same equitable considerations demand tolling of the statute of limitations period in this case. For purposes of the equitable tolling doctrine, Christianson's claim against his insurance broker for failure to secure insurance coverage is indistinguishable from the claim in *Brannon* against an insurer for failure to defend and indemnify. Both cases involve a defendant who was, allegedly, wrongly exposed to liability. We are thus bound by our conclusion in *Brannon* that it would be unfair to force a party to both defend himself and seek redress for wrongful exposure to liability at the same time. If anything, the equities requiring tolling in this case are more compelling than in *Brannon* because Christianson had more to litigate. Christianson was both defending himself in the underlying personal injury lawsuit and litigating the scope of his insurance coverage in separate declaratory judgment actions against Great Divide and Cascade National.

> **a.** **The statute of limitations should have been tolled because Christianson was defending himself in the underlying personal injury suit.**

In September 2004 Titan employee Keith Jones sued Christianson to recover for injuries sustained while using a hydroseeder. The fact that Christianson was being sued and was required to defend himself justifies tolling the statute of limitations on his claim for malpractice for the same reason it justified tolling the statute of limitations in *Brannon*: It would be unjust to require Christianson to defend himself

---

[47] *Id.* (citing *Shaw v. State, Dep't of Admin., Pub. Defender Agency*, 816 P.2d 1358, 1361 (Alaska 1991) ("[W]e note the desirability of allowing a criminal defendant with a valid post-conviction relief claim to pursue that remedy without the distraction of also filing a legal malpractice claim.")).

against Jones and to litigate against his insurance broker at the same time. Christianson would otherwise be required to litigate two cases simultaneously when it was only because of CHI's alleged negligence that Christianson was required to litigate even one.

There is also a clear interest in judicial economy and certainty of damages to be served by allowing Christianson to bring his malpractice claim after judgment has been entered in the underlying lawsuit. The full extent of the damages allegedly caused by CHI's negligence could not be known until the defense had been paid for and judgment entered in the underlying suit. And such a holding would create a bright-line rule without the need for speculative findings. I therefore believe the equities of this case are indistinguishable from those in *Brannon*.

> **b.    The statute of limitations should have been tolled because Christianson was litigating the scope of his insurance coverage with his insurers.**

Christianson also litigated declaratory judgment actions against his insurers, and the statute of limitations on Christianson's malpractice suit should have been tolled pending resolution of these claims. Requiring Christianson to proceed against CHI while litigating declaratory judgment actions against his insurers would force him to take contradictory positions. In the declaratory judgment actions he would seek to show that Great Divide or Cascade National owed him a defense. In the malpractice suit he would seek to show the opposite — that CHI negligently left him exposed to liability. Forcing him to take these contradictory positions at the same time could prejudice him in both actions.

Several jurisdictions have determined that requiring a litigant to take these types of contradictory positions is "untenable."[48] In *Peat, Marwick, Mitchell & Co. v.*

---

[48]    *E.g.*, *Peat, Marwick, Mitchell & Co. v. Lane*, 565 So. 2d 1323, 1326 (Fla.
(continued...)

*Lane*, the Florida Supreme Court found that the statute of limitations on a malpractice claim against a tax accountant did not commence until after the plaintiff litigated the scope of his deficiency with the IRS.[49] The court held that requiring the plaintiff to file their malpractice action, in which they would argue that their accountant engaged in misconduct, at the same time that they were challenging the IRS's deficiency assessment, in which they would argue that their accountant had done their taxes properly, "would have placed them in the wholly untenable position of having to take directly contrary positions in these two actions."[50] The court concluded that "[t]o require a party to assert these two legally inconsistent positions in order to maintain a cause of action for professional malpractice is illogical and unjustified."[51] I agree with the logic of the Florida Supreme Court and would extend it to the issue of equitable tolling in this case.

The fact that Great Divide and Cascade, not Christianson, initiated the declaratory judgment actions to litigate the scope of coverage seems of little consequence to the analysis of equitable tolling in this case. Christianson was actively litigating the question of coverage in both declaratory judgment actions, and if Christianson had prevailed in either action, his subsequent suit against CHI would have been unnecessary. He therefore had multiple legal remedies available to him regardless of which party filed the complaint in those cases. I conclude that the equities in this case require the statute

---

[48](...continued)
1990); *United States Nat'l Bank of Oregon v. Davies*, 548 P.2d 966, 970 (Or. 1976); *Hughes v. Mahaney & Higgens*, 821 S.W.2d 154, 157 (Tex. 1991).

[49]     565 So. 2d at 1326.

[50]     *Id.*

[51]     *Id.*

of limitations to be tolled until the resolution of the lawsuit against Christianson and the resolution of the declaratory judgment actions with Christianson's insurers.

**2. The other conditions necessary to toll the statute of limitations were satisfied in this case.**

Our well-established equitable tolling doctrine requires that, in addition to establishing the proper equities of the case, three conditions must be met before a statute of limitations may be tolled: "(1) pursuit of the initial remedy gives defendant notice of plaintiff's claim, (2) defendant's ability to gather evidence is not prejudiced by the delay, and (3) plaintiff acted reasonably and in good faith."[52] In *Brannon*, we concluded that the first two conditions were satisfied because tender of the defense to the insurance company gave them notice of a potential claim for coverage, and the insurance company would not be prejudiced while the underlying suit was resolved.[53] We held that "[w]hether an insured has acted reasonably and in good faith is a question of fact for the superior court to determine on a case-by-case basis."[54]

It appears that these conditions were similarly satisfied in this case as a matter of law.[55] At a minimum, the case should be remanded to the superior court for additional findings. In my view, CHI was on notice of Christianson's potential malpractice claim because CHI was informed on several occasions of the suit against Christianson and the potential gap in his insurance coverage. When Christianson was

---

[52]   *Dayhoff v. Temsco Helicopters, Inc.*, 772 P.2d 1085, 1087 (Alaska 1989).

[53]   *Brannon v. Continental Cas. Co.*, 137 P.3d 280, 286 (Alaska 2006).

[54]   *Id.*

[55]   *See Beegan v. State, Dep't of Transp. & Pub. Facilities*, 195 P.3d 134, 141-42 (Alaska 2008) (holding that the requirements for equitable tolling were satisfied as a matter of law); *Solomon v. Interior Reg'l Hous. Auth.*, 140 P.3d 882, 885 (Alaska 2006) (same).

sued, he filed notice of the lawsuit with CHI, and it was CHI who tendered the defense to Great Divide.  In November 2006 Mike Dennis, Christianson's insurance broker and an agent of CHI, gave a deposition in which he was informed of the suit against Christianson and reviewed Christianson's insurance policy.  And in July 2007 Christianson tendered his defense to CHI and informed CHI of his intent to take legal action should a gap in coverage be established through the declaratory judgment action against Cascade National.  CHI therefore had notice of a potential malpractice suit.

And CHI was not prejudiced by any delay.  Once CHI was on notice of its potential liability, it had the ability and motivation to gather evidence to defend itself.[56]  There also has been no suggestion that Christianson was acting in bad faith by waiting until after the resolution of the underlying Jones suit and the declaratory judgment actions with Great Divide and Cascade National to file a malpractice claim.

Citing *Gudenau & Co., Inc. v. Sweeney Insurance, Inc.*,[57] the court suggests that equitable tolling is inappropriate in this case because "Christianson did not previously pursue a claim against CHI in any forum."[58]  In *Gudenau*, we held that "[i]nvariably, the statute of limitations is tolled only for those who initially pursue their rights in a judicial or quasi-judicial governmental forum."[59]  But we did not determine that the initial action must be against the same party.  Nor was there any such requirement in *Brannon*.  There we held that Brannon's claim against the insurer was

---

[56]    *See Brannon*, 137 P.3d at 286 (holding that an insurance company that was sued for failure to defend was not prejudiced by tolling the statute of limitations until the end of the underlying suit because once the defense was tendered the insurance company had "the ability and motivation to gather evidence").

[57]    736 P.2d 763 (Alaska 1987).

[58]    Slip Op. at 35.

[59]    *Gudenau & Co., Inc.*, 736 P.2d at 768.

tolled pending resolution of the underlying bankruptcy proceedings against a different party.[60] Indeed, our holding in that case was based on the judgment that it would be unjust to force the plaintiff to litigate with his insurance company while defending the underlying suit.[61] Therefore, a requirement that the statute of limitations may be tolled only pending resolution of claims against the same party conflicts with our holding in *Brannon*.

## III. CONCLUSION

In my view, it was error to conclude that the statute of limitations on Christianson's malpractice claim started to run on September 24, 2004. Christianson had not yet suffered a definite injury, and so an essential element of his claim had not yet accrued. I also believe that the statute of limitations in this case should have been tolled until the resolution of Christianson's underlying litigation. I therefore respectfully dissent.

---

[60] *Brannon*, 137 P.3d at 287.

[61] *Id.* at 286.